UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSEPH SKILKEN & CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00161-JAW |
| | ) | |
| BERKLEY AVIATION LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DETERMINE EFFECT OF TENDER &
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

In this reach and apply action, the Court rejects the Plaintiff's contention that the insurer's settlement of one claim requires the insurer to concede to another. But the Court concludes that the insurer received timely notice of the accident and damage under 24-A M.R.S. § 2904. The Court further concludes that the insurer failed to give the notice of nonrenewal of the policy required by 24-A M.R.S. § 2908(1)(D) and (5)(B) and therefore the insurance policy was still in effect as of the date of the accident. The Court therefore concludes that the insurer is liable to the damaged third party under the reach and apply action, leaving for later resolution whether the amount of the damage award was reasonable.

## I. PROCEDURAL HISTORY

On May 1, 2015, Joseph Skilken & Co.[1] (Skilken) filed a complaint in this Court against Berkley Aviation LLC (Berkley) claiming entitlement to the proceeds of an

---

[1]      The original Complaint included Karen Skilken as a plaintiff. *Compl. to Reach and Apply Insurance Benefits* ¶ 1 (ECF No. 1). On September 1, 2016, Ms. Skilken filed a Stipulation of

insurance policy Berkley issued to Oxford Aviation, Inc. (Oxford). *Compl. to Reach and Apply Insurance Benefits* (ECF No. 1). On June 30, 2015, Berkley answered the complaint. *Answer to Compl.* (ECF No. 6). On November 30, 2015, Skilken moved to amend the complaint to add a third count. *Pls.' Mot. to Amend Compl.* (*Consent Mot.*) (ECF No. 14). On December 1, 2015, the Court granted the motion to amend the complaint. *Order Granting Without Obj. Mot. to Amend* (ECF No. 16). On December 2, 2015, Skilken filed the First Amended Complaint. *First Am. Compl.* (ECF No. 18). On December 16, 2015, Berkley answered the First Amended Complaint. *Def.'s Answer to Pls.' Am. Compl.* (ECF No. 19).

On June 17, 2016, Skilken filed a motion to obtain a court order clarifying the effect of Berkley's June 17, 2016 tender of a check for $105,179.09 to Ms. Skilken. *Pls.' Mot. to Determine Effect of Tender* (ECF No. 34) (*Tender Mot.*). On July 8, 2016, Berkley filed its opposition. *Def. Berkley Aviation's Resp. to Pls.' Mot. to Determine Effect of Tender* (ECF No. 38) (*Tender Opp'n*).

On July 18, 2016, Skilken filed a motion for summary judgment, *Pls.' Mot. for Summ. J.* (ECF No. 39) (*Skilken Mot.*), with a statement of facts, *Pls.' Statement of Material Facts* (ECF No. 40) (PSMF), and a set of stipulated facts. *Stip.* (ECF No. 41). Skilken also requested oral argument. *Skilken Mot.* at 1. On August 8, 2016, Berkley filed a response to Skilken's motion for summary judgment, *Def. Berkley Aviation's Opp'n to Pls.' Mot. for Summ. J.* (ECF No. 48) (*Berkley Opp'n*), and a

---

Dismissal, signed by counsel for the Plaintiffs and Defendant, and she has been terminated as a party. *Stip. of Dismissal of Karen Skilken* (ECF No. 53). The remaining dispute is between Joseph Skilken & Co. and Berkley Aviation LLC.

response to its statement of facts. *Def. Berkley Aviation's Opposing Statement of Facts* (ECF No. 49) (DRPSMF). On August 15, 2016, Skilken replied to Berkley's opposition to its motion for summary judgment. *Pls.' Reply to Mem. in Opp'n to Pls.' Mot. for Summ. J.* (ECF No. 50) (*Skilken Reply*).

On July 18, 2016, Berkley filed a cross-motion for summary judgment, *Def. Berkley Aviation's Mot. for Summ. J.* (ECF No. 43) (*Berkley Mot.*), with a statement of facts. *Def. Berkley Aviation's Statement of Material Facts* (ECF No. 44) (DSMF). On August 6, 2016, Skilken responded to Berkley's motion, *Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 45) (*Skilken Opp'n*), and filed a responsive statement of facts. *Pls.' Opposing Statement of Material Facts* (PRDSMF). On August 17, 2016, Berkley replied to Skilken's opposition to its motion for summary judgment. *Def. Berkley Aviation's Reply to Pls.' Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 52) (*Berkley Reply*).

On August 16, 2016, the Court granted the motion for oral argument, *Order Granting Mot. for Oral Arg. and Hr'g* (ECF No. 51), and on March 8, 2017, the Court held oral argument on the pending motions. *Min. Entry* (ECF No. 56).

## II.    STATEMENT OF FACTS[2]

---

[2]    At oral argument on March 8, 2017, the parties agreed that there are no genuine issues of material fact that would preclude summary judgment.

Where, as here, the parties file cross-motions for summary judgment, the Court must evaluate each motion independently and "determine 'whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" *Matusevich v. Middlesex Mut. Assurance Co.*, 782 F.3d 56, 59 (1st Cir. 2015) (quoting *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 170 (1st Cir. 2004)). For cross-motions for summary judgment the standard of review is applied to each motion separately. *Libertarian Party of New Hampshire v. Gardner*, 759 F. Supp. 2d 215, 221 (D.N.H. 2010), *aff'd*, 638 F.3d 6 (1st Cir. 2011). Thus, in accordance with "the conventional summary judgment praxis," in regards to Skilken's motion for summary judgment (ECF No. 39) and its supporting facts (ECF No. 40), the Court recounts the facts in the light most hospitable to Berkley's case theories consistent with

3

## A.      The Accident, Oxford's Negligence, & the Default Judgments

Skilken owns a Cessna 441 aircraft (the Aircraft or the Cessna 441).  *Stip.* ¶ 2.
In the spring of 2013, Oxford painted the Aircraft.  *Id.* ¶ 3.  As part of its work painting
the Aircraft, Oxford removed the fin cap (a part of the Aircraft's vertical stabilizer),
and then, after painting, replaced the fin cap.  *Id.* ¶ 4.  The fin cap is attached to the
Aircraft with eight machine screws: four on the right side and four on the left.  *Id.* ¶
5.  Oxford had a duty to reattach the fin cap using all eight machine screws.  *Id.* ¶ 6.
When the Oxford mechanic replaced the fin cap, he failed to place any of the four
machine screws required for the right side of the fin cap.  *Id.* ¶ 7.  A reasonably careful
aircraft mechanic needing to place the remaining four screws, would have, to ensure
against forgetting to do so, physically flagged the fin cap, or made a note to himself
or herself, or made a note in the shift-to-shift work list, or, as is the best practice,
undertaken some combination of these measures.  PSMF ¶ 1; DRPSMF ¶ 1.[3]  The

---

record support.  *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).  In compliance
with this obligation, the Court recites supported facts as true even if Skilken disputes them.  *Id.*
Likewise, with Berkley's cross-motion for summary judgment (ECF No. 43) and its supporting facts
(ECF No. 44), the Court recounts the facts in the light most hospitable to Skilken's case theories
consistent with record support and recites supported facts as true even if Berkley disputes them.  *Id.*

[3]      Berkley, in a joint response, requests to strike paragraphs 1–9 of the Plaintiff's statement of
material facts.  DRPSMF ¶¶ 1–9.  It argues that the statements, which concern the underlying
negligence of Oxford and the causal relationship between the negligence and damages allegedly
sustained by Karen Skilken and Joseph Skilken & Co., "are not material to the issues before this
Court."  *Id.*  Without waiving the request to strike, Berkley admits these statements for purposes of
this summary judgment motion.  *Id.*

The Court agrees that Oxford's negligence and liability are not relevant to whether Skilken
can reach and apply the Policy, the central disputed issue in this motion.  Berkley admits that if the
Policy was in place at the time of the hard landing, the damages would be covered losses under the
Policy.  *See* DRPSMF ¶¶ 25, 28.  However, because the statements provide context and background
for this lawsuit, and because Berkley admits the facts for purposes of this motion, the Court includes
the statements.

4

Oxford mechanic who installed the fin cap relied solely on his memory to remember to come back and install the right side machine screws.  PSMF ¶ 2; DRPSMF ¶ 2.

Before releasing the Aircraft to service, Oxford conducted a visual inspection of the Aircraft.  *Stip.* ¶ 8.  A reasonably careful visual inspection would have revealed the missing machine screws; however, Oxford's visual inspection did not reveal the missing machine screws.  *Id.* ¶¶ 9–10.  Oxford had a duty to the Plaintiff to conduct the visual inspection in a reasonably careful manner.  PSMF ¶ 3; DRPSMF ¶ 3.  Oxford's failure to detect the missing machine screws was a breach of its duty to the Plaintiff.  PSMF ¶ 4; DRPSMF ¶ 4.

On May 30, 2013, Oxford returned the Aircraft to service.  *Stip.* ¶ 11.  On the same day, Steven Skilken flew the Aircraft from Oxford Aviation's Oxford, Maine facility to Columbus, Ohio.  *Id.* ¶ 12.  On May 31, 2013, Steven Skilken (pilot in command), Mrs. Skilken, their two children, and Mrs. Skilken's parents departed Columbus, Ohio in the Aircraft en route to Colorado.  *Id.* ¶ 13.  On May 31, 2013, approaching the airport in Colorado Springs, Steven Skilken lost control of the Aircraft but was able to bring the Aircraft to the runway and make a hard landing.  *Id.* ¶¶ 14–15.

After landing, an inspection revealed that the fin cap was no longer on the Aircraft.  *Id.* ¶ 17.  The fin cap had come off the Aircraft mid-flight between Columbus and Colorado.  *Id.* ¶ 18.  The fin cap came off the Aircraft because the machine screws were missing.  PSMF ¶ 5; DRPSMF ¶ 5.  The fin cap forms the top and leading edge of the vertical stabilizer, or tail.  PSMF ¶ 6; DRPSMF ¶ 6.  Without the fin cap in

place the leading edge of the rudder itself is improperly exposed to air moving at the speed of the aircraft, at speeds approaching 300 knots. PSMF ¶ 7; DRPSMF ¶ 7. The fin cap plays a critical role in an aircraft's aerodynamic stability, and its absence results in a loss of aircraft control. PSMF ¶ 8; DRPSMF ¶ 8. The loss of the fin cap caused the loss of control and the hard landing. *Stip.* ¶ 19. The hard landing damaged the Aircraft and injured Karen Skilken. *Id.* ¶ 16; PSMF ¶ 9; DRPSMF ¶ 9.

The parties agreed that the Court may take judicial notice of the following judgments against Oxford concerning the accident:

(1) *Karen Skilken v. Oxford Aviation, Inc.*, 2:13-cv-00323-JAW, $104,382.74;

(2) *Joseph Skilken & Co. v. Oxford Aviation, Inc.*, 2:13-cv-00322-JAW, $423,295.77.

*Stip.* ¶ 32. In addition, the parties have agreed that a deputy served Oxford with the summons and complaint in both these civil actions on August 27, 2013. *Id.* ¶¶ 33–34.

## B. Oxford's Insurance Policy

Berkley is a Delaware limited liability company with a principal place of business in Santa Barbara, California. *Id.* ¶ 20. Berkley provides insurance to the aviation industry. *Id.* ¶ 21. StarNet Insurance Company (StarNet) is a subsidiary of Berkley. *Id.* ¶ 22.

From May 14, 2012 to May 14, 2013, Berkley insured Oxford in accordance with the policy terms under policy number BA120500146. *Id.* ¶¶ 23, 25. By stipulation, the parties placed before the Court for purposes of the pending motions

6

a copy of the Commercial General Liability Aviation Insurance Policy (Policy) issued by StarNet in favor of Oxford.  *Id.* ¶ 24; *id.* Attach. 2 *StarNet Ins. Co. Commercial Gen. Liab. Aviation Coverage* (*Policy*).

The Policy states in Section IV paragraph 17: "If we decide not to renew this coverage, we will mail or deliver to the first Named Insured shown in the Declaration written notice of the non-renewal not less than 30 days before the expiration date." PSMF ¶ 13; DRPSMF ¶ 13.  The "first Named Insured" referred to in Section IV paragraph 17 of the Policy is Oxford.  *Stip.* ¶ 27.  Section IV paragraph 17 of the Policy is amended by an endorsement which states in pertinent part: "If we decide not to renew this coverage, we will mail or deliver to the first Named Insured shown in the Declaration written notice of the non-renewal not less than 33 days before the expiration date."  PSMF ¶ 14; DRPSMF ¶ 14.  The "expiration date" referred to in Section IV paragraph 17 of the Policy is May 14, 2013.  PSMF ¶ 15; DRPSMF ¶ 15. In order to have coverage continue on a year-to-year policy after expiration, an insured needs to reapply for coverage.  DSMF ¶ 4; PRDSMF ¶ 4.[4]

---

[4]    Paragraph 4 of the Defendant's statement of facts originally read: "The Policy issued by StarNet insurance to Oxford Aviation expired on May 14, 2013 after a one-year term.  In order to have coverage continue, Oxford Aviation needed to reapply for coverage."  DSMF ¶ 4.  Skilken denies this statement:

> While the policy by its terms expired on May 31, 2013, pursuant to Title 24-A M.R.S. § 2908 as well as the policy terms, before the policy could terminate by non-renewal the insurer was required to provide Oxford Aviation with 30 or 33 days notice of the insurer's intent not to renew the policy.  In the absence of such notice, Berkley may not assert that the policy was terminated on May 14, 2013.

PRDSMF ¶ 4 (citing *Adams v. Universal Underwriters Ins. Co.*, No. 1:10-cv-00146-JAW, 2011 U.S. Dist. LEXIS 53584 (D. Me. May 18, 2011)).

As to the first part of Berkley's statement, whether Oxford's Policy actually expired on May 14, 2013, is a central disputed issue in this case.  The record already reflects the fact that the expiration date of the policy, by its terms, was May 14, 2013, *see* PSMF ¶ 15; DRPSMF ¶ 15, so the Court excises

The Policy, if it was in effect when the hard landing occurred, would have required StarNet to indemnify Oxford for the claims in the case of *Karen Skilken v. Oxford Aviation Inc.*, 2:13:cv-00323-JAW.  PSMF ¶¶ 23–24; DRPSMF ¶¶ 23–24.[5] Assuming the allegations in the complaint are true, and assuming the Policy was in effect on May 31, 2013, Karen Skilken's claim for personal injury set forth in the complaint is a covered loss under the Policy.  PSMF ¶ 25; DRPSMF ¶ 25.  The Policy, if it was in effect at the time of the hard landing, would also have required StarNet to indemnify Oxford for the claims set forth in the case of *Joseph Skilken & Co. v. Oxford Aviation, Inc.*, 2:13-cv-00322-JAW.  PSMF ¶¶ 26–27; DRPSMF ¶¶ 26–27.[6] Assuming the allegations in the complaint are true, and assuming the Policy was in effect on May 31, 2013, the claim for damage to the aircraft in the complaint is a covered loss under the Policy.  PSMF ¶ 28; DRPSMF ¶ 28.[7]

---

this portion of the statement.  Similarly, the second part of the statement as to whether coverage may continue without reapplication, is a legal, not factual issue, which the Court addresses in its discussion.  The Court declines to become enmeshed in statement of fact disputes over legal issues and has rephrased the statement slightly to frame the legal issue.

[5]      Berkley qualifies the statement in paragraph 24:

> Berkley Aviation admits that if the policy was in effect at the time of the hard landing, that the policy would have provided coverage to Oxford Aviation for any judgment obtained against it by Karen Skilken, provided notice of the claim was perfected consistent with Defendant's position in its Motion for Summary Judgment.

DRPSMF ¶ 24.  Berkley's qualification concerns the notice requirement in Maine's reach and apply statute, 24-A M.R.S. § 2904, which is the issue in this case.  However, the Court interprets Skilken's statement to mean that if the Policy was in effect on May 31, 2013, when the accident occurred, then Oxford would have been insured against the claims set forth in Karen Skilken's case, and therefore could have sought indemnification from StarNet under the Policy.  Berkley admits that Karen Skilken's damages were covered losses under the Policy.  DRPSMF ¶ 25.  Therefore, the Court rejects the qualification which pertains to the issue of reach and apply, not indemnification.

[6]      Berkley qualifies paragraph 27 for the same reasons as set forth in note 5.  The Court rejects the qualification.  *See supra* note 5.

[7]      Berkley qualifies paragraph 28.  It admits the statement but "does not admit that the damages awarded in the judgment accurately reflect any loss sustained by Joseph Skilken & Co. as the result of this incident."  DRPSMF ¶ 28.  Berkley provides no record citation for this qualification, which is a

### C.   Cross Insurance's Communications with Oxford Regarding Policy Renewal

Cross Insurance, for purposes of Berkley's insurer-insured relationship with Oxford, was Berkley's agent.  PSMF ¶ 11; DRPSMF ¶ 11.  Melissa Connell works as a commercial lines account manager at Cross Insurance.  DSMF ¶ 1; PRDSMF ¶ 1. Jeffrey Vermette, who works as a commercial account executive at Cross Insurance, is Ms. Connell's supervisor.  DSMF ¶ 2; PRDSMF ¶ 2.  Mr. Vermette was responsible for the Oxford account.  DSMF ¶ 3; PRDSMF ¶ 3.

On March 1, 2013, StarNet/Berkley sent a letter to Oxford concerning the upcoming renewal of the aviation policy.  *Stip.* ¶ 26; *id.* Attach. 3 *Letter from Jason Niemela, Pres. Berkley Aviation, LLC to Oxford Aviation, Inc.* (Mar. 1, 2013) (*March 1, 2013 Letter*).  Before May 14, 2013, Ms. Connell attempted to connect with Oxford to complete the application for Berkley in order to provide Oxford with a renewal quote for their policy.  DSMF ¶ 5; PRDSMF ¶ 5.  Additionally, prior to the expiration of the Policy, Mr. Vermette called Oxford and informed the owner, James Horowitz, that if Cross Insurance did not have the renewal application, the policy would not be renewed.  DSMF ¶ 6; PRDSMF ¶ 6.  Prior to the expiration of the policy in April and in May, Mr. Vermette went to Oxford to meet with Mr. Horowitz, but Mr. Horowitz could not see him.  DSMF ¶ 7; PRDSMF ¶ 7.[8]  Mr. Vermette tried a couple more times,

---

violation of the Local Rules.  *See* D. ME. LOC. R. 56(c) ("The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule").  Moreover, the Court finds that the qualification is not responsive to the statement and rejects it.

[8]   Skilken admits that Mr. Vermette went to Oxford Aviation three times but denies that Mr. Horowitz would not see him.  PRDSMF ¶ 7.  Skilken cites Mr. Vermette's deposition transcript and says that Mr. Vermette testified that Mr. Horowitz *couldn't* see him.  *Id.* (citing PSMF Attach. 5 *Dep.*

and still Mr. Horowitz could not see him.  *Id.*  On May 8, 2013, Ms. Connell emailed Louise Horowitz at Oxford and attached an application from Berkley which identified by arrows certain information that Oxford needed to provide to Berkley in order to obtain a replacement policy.  DSMF ¶ 8; PRDSMF ¶ 8.

### D.    May 14, 2013 Letter from Cross Insurance to Oxford

On May 14, 2013, Ms. Connell sent a letter to Oxford as a courtesy advising it that its coverage had lapsed and that Cross Insurance was willing to continue to work with Oxford to find coverage.  *Stip.* ¶ 28; *id.* Attach. 4 *Letter from Melissa J. Connell to Oxford Aviation, Inc.* (May 14, 2013) (*May 14, 2013 Letter*); DSMF ¶ 9; PRDSMF ¶ 9.  In that letter, Cross Insurance told Oxford that the Policy was cancelled effective 12:01 a.m., May 14, 2013.  *Stip.* ¶ 29.  In an email of that same date, Ms. Connell advised Oxford that if it wanted to replace the expired coverage that James Horowitz needed to get in touch with Mr. Vermette.  DSMF ¶ 10; PRDSMF ¶ 10.  Cross Insurance continued after May 14, 2013 to work with Oxford to get a policy in place.  DSMF ¶ 11; PRDSMF ¶ 11.  Cross Insurance received a quote from Berkley for the new policy, but Oxford did not pay the premium to put the new policy in force.  *Id.*[9]

---

*of Jeffrey A. Vermette* 28:1-6 (*Vermette Dep.*)).  The Court finds that the record supports Skilken's denial and changes the language "would not" to "could not."  *See Vermette Dep.* 28:1-6 ("I went out once and [Mr. Horowitz] *couldn't* see me and I tried a couple more times and he still *couldn't* see me").

[9]      Skilken denies the portion of Berkley's paragraph 11 that reads: "Oxford Aviation chose not to pay the premium needed to put [the new policy] in force."  PRDSMF ¶ 11.  It argues "[t]his assertion of fact is supported by testimony the foundation for which is either speculation or inadmissible hearsay."  *Id.*

In support of this statement in paragraph 11, Berkley relies on the deposition testimony of Mr. Vermette, in which he testifies that the new policy was not placed "[b]ecause the client chose not to put it in force by paying for it."  *Vermette Dep.* 43:25-44:7.  The Court agrees that whether the client made a choice not to put the Policy in place is inadmissible speculation.  *See Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) ("[W]e afford no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative'") (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st

###     E.     Notice of Nonrenewal

Maine law requires that nonrenewal of the Policy insuring Oxford be accomplished in accordance with 24-A M.R.S. § 2908.  PSMF ¶ 10; DRPSMF ¶ 10.  According to Ms. Connell and Mr. Vermette, neither Berkley nor Cross Insurance sent Oxford a notice of Policy nonrenewal at least 30 days prior to May 31, 2013.  PSMF ¶¶ 12, 16; DRPSMF ¶¶ 12, 16.[10]  Neither Cross Insurance nor Berkley verbally

---

Cir. 2001)).  However, the fact that Oxford did not pay the premium is not speculation.  Jeffrey Vermette, a commercial account executive at Cross Insurance responsible for the Oxford account, would know whether Oxford paid the premium for the new policy and whether the payment of premiums put a policy in force.  The Court revises the statement accordingly.

[10]     Skilken's original statements in paragraphs 12 and 16 also stated that Berkley and Cross Insurance failed to send a notice of Policy nonrenewal that conformed with 24-A M.R.S. § 2908 or section IV, paragraph 17, of the Policy.  *See* PSMF ¶¶ 12, 16.

Berkley requests that these portions of paragraphs 12 and 16 be stricken because they are not statements of fact.  DRPSMF ¶¶ 12, 16.  It argues that "[w]hether the notice provided by Berkley Aviation complied with the requirements of 24-A M.R.S. § 2908 is a question of law to be decided by the Court."  *Id.* (citing *Adams*, 2011 U.S. Dist. LEXIS 53584).  Berkley adds that Jeffrey Vermette, the individual whose opinion Skilken uses to support its statement, "lacks the qualifications to render an opinion as to whether the letter sent by Berkley Aviation on March 1, 2013 complied with the requirements of Maine law."  *Id.*

The Court agrees that whether notice complied with the requirements of Maine law and the Policy itself are central disputed issues in this lawsuit.  Skilken's statements are argument, not evidence.  The Court excises the portion of the statement concerning whether the notice conformed with section 2908 and paragraph 17 of the Policy.

Berkley also denies the remainder of the statements in paragraphs 12 and 16:

The policy issued to Oxford Aviation had a policy period of May 14, 2012 to May 14, 2013.  On March 1, 2013, Berkley Aviation sent a letter to Oxford Aviation regarding its policy which expired on May 14, 2013.  The letter advised Oxford Aviation that in order to allow Berkley sufficient time to review and determine Oxford Aviation's renewal position, that Oxford Aviation needed to provide updated information to Cross Insurance.  In that letter, Berkley explained that upon receipt of the completed underwriting information from Cross Insurance, Berkley would review and determine its renewal position.

Jeffrey Vermette advised James Horowitz, the owner of Oxford Aviation, that he needed to complete the required application in order to have Berkley Aviation consider renewing the policy.  Mr. Vermette went to Oxford Aviation on several occasions to attempt to meet with Mr. Horowitz to go over the renewal application but was unsuccessful.

DRPSMF ¶¶ 12, 16.

To support paragraphs 12 and 16, Skilken cites the deposition testimony of Jeffrey Vermette and Melissa Connell, the Cross Insurance employees responsible for the Oxford account.  Mr.

told Oxford that the Policy was not renewed at least 30 days prior to May 30, 2013.

PSMF ¶ 17; DRPSMF ¶ 17.[11]   According to Mr. Vermette at Cross Insurance, the

_____

Vermette's and Ms. Connell's testimony supports Skilken's statement that neither Berkley nor Cross Insurance sent Oxford a notice of Policy nonrenewal.  *See Vermette Dep.* 28:13-19 ("Q: Did Melissa ever talk to you about providing legally correct notice to Oxford Aviation of the nonrenewal of the policy? A: Yes. Q: What did she say and when did she say it? A: She said that there was never legal notice sent"); PSMF Attach. 6 *Dep. of Melissa J. Connell* 10:1-20 (*Connell Dep.*) ("Q: [D]id Berkley Aviation or Cross Insurance mail or deliver to Oxford Aviation written notice of the nonrenewal of this policy not less than 30 days before May 14, 2013? A: It would be Berkley Aviation's—it would be Berkley Aviation that would do that, Cross would not, and I have not seen one").   Account managers and executives at Cross Insurance would know what a typical notice of nonrenewal under section 2908 looks like and the purpose and intent behind their communications to Oxford (at least Berkley has not claimed otherwise).  In fact, Ms. Connell testified that normally, Cross Insurance would receive a copy of the letter if the carrier decided not to renew a policy.  *Connell Dep.* 10:8-11.

At the same time, viewing the facts in a light most favorable to Berkley's theory, for purposes of Skilken's summary judgment motion, it is reasonable to infer that the communications from Cross Insurance and Berkley would have put Oxford on notice that if it did not complete the application and underwriting information, the Policy would not be renewed.  One central issue in this case is whether Berkley or Cross Insurance provided effective notice of nonrenewal at least 30 days prior to the accident as required by Maine law.  The Court therefore revises paragraphs 12 and 16 to reflect that it is Mr. Vermette and Ms. Connell's view that neither Cross Insurance nor Berkley sent a notice of nonrenewal.

[11]   Berkley denies this statement:

Both Berkley Aviation and Cross Insurance advised Oxford Aviation that in order to be considered for renewal, that Oxford needed to complete an application for coverage. In its letter of March 1, 2013, Berkley informed Oxford Aviation that its policy would expire on May 14, 2013 and that in order to be considered for renewal that Oxford Aviation needed to complete the underwriting information with Cross Insurance.  Prior to the expiration of the policy, Jeffrey Vermette called Oxford Aviation and informed the owner, James Horowitz, that if Cross Insurance did not have the renewal application that the policy would not be renewed.  Jeffrey Vermette and Melissa Connell of Cross Insurance both attempted on more than one occasion to assist Oxford Aviation in completing the underwriting information but Oxford Aviation did not respond to these efforts.

DRPSMF ¶ 17.

In support of its statement, Skilken cites the deposition testimony of Mr. Vermette in which he says that he did not call Oxford and tell them that the Policy was not going to be renewed.  *See Vermette Dep.* 27:2-4.

In support of its denial, Berkley cites several documents.  The first is the letter of March 1, 2013 from Berkley to Oxford in which Berkley states that the Policy's expiration date is May 14, 2013, and that "[i]n order to allow us sufficient time to review and determine your renewal position, updated renewal information must be provided by you, to your broker."  *March 1, 2013 Letter*.  Nothing in this letter refutes Skilken's statement that no one verbally told Oxford that the policy was not renewed.

Berkley also cites the deposition transcript of Mr. Vermette in which Mr. Vermette testifies that he did not call Oxford and say that the Policy was not going to be renewed because he "had informed the client if we didn't have the renewal application, the policy would not be renewed."

letter dated March 1, 2013 from Starnet to Oxford was not a notice of nonrenewal of the Policy.  PSMF ¶ 18; DRPSMF ¶ 18.[12]

On June 6, 2013, Louise Horowitz of Oxford spoke to Cross Insurance asking for "a non-renewal from [Berkley]."  PSMF ¶ 19; DRPSMF ¶ 19.  During that conversation, Cross Insurance told Ms. Horowitz that no nonrenewal letter was issued by Berkley.  PSMF ¶ 20; DRPSMF ¶ 20.  Following the June 6, 2013 telephone conference with Louise Horowitz, Cross Insurance faxed Ms. Horowitz the May 14, 2013 letter.  PSMF ¶ 21; DRPSMF ¶ 21.[13]  On the fax cover sheet accompanying Cross

---

*Vermette Dep.* 27:2-23.  This citation supports Skilken's statement that Berkley did not verbally tell Oxford that the policy was not renewed and explains why Mr. Vermette did not do so.

Finally, Berkley cites several documents to show Mr. Vermette and Ms. Connell's repeated attempts to assist Oxford with the underwriting information.  *See Connell Dep.* 20:5-11; *Vermette Dep.* 28:1-6; PSMF Attach. 10 *Oxford Aviation Timeline.*

The Court rejects the denial because none of Berkley's cited material refutes the statement that no one from Berkley or Cross Insurance verbally informed Oxford that the policy was not renewed.  The Court, however, is required to view the fact in a light most favorable to Berkley for purposes of Skilken's motion. *Gardner*, 759 F. Supp. 2d at 221; *Gillen*, 283 F.3d at 17.  It is reasonable to infer from the facts that even though no one explicitly told Oxford the Policy was not renewed, Oxford could have inferred this fact from the series of communications warning Oxford that if it did not complete the renewal application, the Policy would not be renewed at its expiration date.  Because the facts from which the Court can draw this inference are already reflected in the record, the Court retains Skilken's statement in paragraph 17.

[12]  Berkley requests to strike and denies this statement.  DRPSMF ¶ 18.  In support of the statement, Skilken cites the deposition transcript of Mr. Vermette in which he says that the March 1, 2013 letter is not a notice of nonrenewal.  *See Vermette Dep.* 36:23-25.  Berkley argues that the statement should be stricken because Mr. Vermette "lacks the qualifications to render an opinion as to whether the letter sent by Berkley Aviation on March 1, 2013 complied with the requirements of Maine law" and further because "[p]laintiffs have not identified Mr. Vermette as an expert who will testify on this issue."  DRPSMF ¶ 18.

Although his opinions about Maine law are not binding on this Court, Mr. Vermette, as a commercial account executive at Cross Insurance, would presumably know what a notice of nonrenewal typically looks like and the intent behind Cross Insurance's communications.  *See* discussion *supra* note 10.  Because the Court must view the facts in a light most favorable to Berkley for purposes of Skilken's motion for summary judgment, the Court will revise the statement to reflect that it is Mr. Vermette's own view.

[13]  Berkley qualifies this statement: "Cross Insurance originally sent this letter to Oxford Aviation on or around May 14, 2013."  DRPSMF ¶ 21.  It cites Ms. Connell's deposition transcript in which she testifies "I believe I talked to [Ms. Horowitz] on the phone, and she asked me to provide her this letter which had already been sent."  *Connell Dep.* 14:8-10.  The Court finds that this qualification is already reflected in the record and so does not include it here to avoid redundancy.  *See Stip.* ¶ 28.

Insurance's fax to Oxford of the May 14, 2013 letter, Cross Insurance wrote: "[t]his is the only letter that was sent.  Berkley Aviation is not a policy that renews – you must reapply every year.  Due to that they did not issue any letter."  PSMF ¶ 22; DRPSMF ¶ 22.[14]

## F.  Berkley & Oxford's Communications Regarding the Accident & Loss

On or about July 1, 2013, James M. Bowie, an attorney with Thompson & Bowie LLP, spoke with Ryan R. Gould, Vice President of Claims for Berkley.  DSMF ¶ 12; PRDSMF ¶ 12.  On that date, Mr. Gould sent Mr. Bowie a letter addressed to Naji Malek of Berkley dated June 24, 2013 from John S. Hoff, an attorney with the law firm of Hoff & Herran, who represented Oxford.  DSMF ¶ 13; PRDSMF ¶ 13.  The parties stipulated that the Court may consider for purposes of the pending motions this June 24, 2013 letter, as well as its attachment, a June 6, 2013 letter from Skilken's attorney to Oxford concerning the May 31, 2013 incident and the Skilken Aircraft.  *Stip.* ¶ 31; *id.* Attach. 5 *Letter from Att'y John S. Hoff to Naji Malek* at 1-3 (June 24, 2013) (*June 24, 2013 Letter*); *id.* Attach. 5 *Letter from Att'y Bruce A. Lampert to James Horowitz* at 4 (June 6, 2013) (*June 6, 2013 Letter*).

On or about that same day, July 1, 2013, Mr. Gould contacted Mr. Hoff advising him to direct all further communications directly to Mr. Bowie and asking him for

---

[14]     Berkley qualifies this statement: "Defendant Berkley Aviation admits that Plaintiff has accurately set forth the contents of the fax cover sheet sent by Cross Insurance to Oxford Aviation. Berkley Aviation contends that its letter of March 1, 2013 substantially complied with the notice provisions set forth in 24-A M.R.S. § 2908 and its policy with Oxford Aviation."  DRPSMF ¶ 22.
        Berkley does not provide a record citation for its qualification and therefore is in violation of the Local Rules.  *See* D. ME. LOC. R. 56(c).  Furthermore, Berkley's statement is argument, not evidence.  The Court rejects the qualification.

information regarding the alleged loss as well as Oxford's involvement with that loss. DSMF ¶ 14; PRDSMF ¶ 14.  Mr. Gould asked Mr. Hoff for details on the loss and informed him that he could find nothing on the National Transportation Safety Board (NTSB) site about the accident.  DSMF ¶ 15; PRDSMF ¶ 15.  On July 1, 2013, Mr. Bowie received a copy of an email addressed to Mr. Gould from Mr. Hoff advising Mr. Gould that Mr. Hoff would not direct any further communications directly to Berkley given Berkley's representation by counsel.  DSMF ¶ 16; PRDSMF ¶ 16.  On July 9, 2013, Mr. Bowie sent an email to Mr. Hoff acknowledging his email of July 1, 2013, and advising him that Mr. Bowie's office was reviewing the matter on behalf of Berkley and StarNet.  DSMF ¶ 17; PRDSMF ¶ 17.  Mr. Bowie asked Mr. Hoff to provide him with a brief answer to the information requested by Mr. Gould which would provide some context for the coverage issues set forth in Mr. Hoff's letter. DSMF ¶ 18; PRDSMF ¶ 18.  On July 11, 2013, Mr. Bowie received a response from Jeffrey F. Clement, an attorney with Hoff & Herran, advising him that Mr. Clement had sent the request for information along to his client (Oxford) and would respond shortly after hearing from his client.  DSMF ¶ 19; PRDSMF ¶ 19.  Mr. Bowie did not receive any further communications from anyone at Hoff & Herran.  DSMF ¶ 20; PRDSMF ¶ 20.

Mr. Bowie never received any notification from anyone at Hoff & Herran that a lawsuit had been filed against Oxford or that Joseph Skilken & Co. was pursuing a claim against Oxford.  DSMF ¶ 21; PRDSMF ¶ 21.  During the summer of 2013, Mr. Gould attempted to locate information regarding the loss through the NTSB site but

was unable to locate any reference to the accident. DSMF ¶ 22; PRDSMF ¶ 22. The first time Mr. Bowie became aware of a lawsuit was in October of 2014. DSMF ¶ 23; PRDSMF ¶ 23. At that time, he was doing research on another matter and came across a recommended decision on a motion for a turnover order issued by Magistrate Judge John S. Rich III in the matter of Joseph Skilken & Co. v. Oxford Aviation, No. 2:13-cv-322-JAW and dated September 30, 2014. *Id.* Berkley first became aware of the Skilken lawsuits against Oxford when Mr. Bowie advised Mr. Gould on or about October 6, 2014 that he had found this Recommended Decision regarding the turnover order. DSMF ¶ 24; PRDSMF ¶ 24.

Neither Cross Insurance nor Berkley ever informed Oxford, in writing or otherwise, that the Policy was in effect on May 31, 2013 when the hard landing occurred. *Stip.* ¶ 30.

## III.   DISCUSSION

### A.   Motion on Effect of Tender

Skilken claims that Berkley should be estopped from continuing to deny Skilken's right to reach and apply the Policy in this lawsuit because it tendered a check for the damages in the related lawsuit concerning Karen Skilken. *Tender Mot.* at 1. Skilken argues that it stands "in Oxford Aviation's shoes to the extent [it] seeks the indemnification Berkley owed Oxford Aviation under the Policy." *Id.* at 6 (citing *Edwards v. Lexington Ins. Co.*, 507 F.3d 35, 39 (1st Cir. 2007)). It goes on to say that because it stands in Oxford Aviation's shoes, the concept of good faith and fair dealing between an insurer and insured extends to it and therefore Berkley cannot pick and

choose which of the claims it pays because the facts determining whether coverage exists are identical as to each of these claims. *Id.* at 6–7.

In response, Berkley argues that "[t]he fact that two separate causes of action raise related issues does not preclude a Defendant from making a determination that it will contest those claims only in the context of one of those proceedings." *Tender Opp'n* at 2. It states that Karen Skilken had a judgment for damages entered by the Court after a testimonial hearing and the opportunity to present evidence and fully litigate her claim and that she never moved to challenge the judgment, set aside the judgment, or appeal the judgment. *Id.* at 3. Therefore, Berkley argues, Karen Skilken's decision on damages is "res judicata and cannot be re-litigated by her." *Id.* Additionally, Berkley argues that it is not estopped by the tender from asserting its defenses to the reach and apply action brought by Joseph Skilken & Co. because "[t]his is not a situation where Berkley has obtained a ruling from the Court on a legal position and then seeks to take a position directly contrary to that ruling." *Id.*

Skilken is correct that it stands in Oxford's shoes to the extent that it seeks indemnification under Maine's reach and apply statute. *See Edwards*, 507 F.3d at 39 ("Maine's reach and apply statute places Edwards in Game Tracker's shoes to the extent he seeks whatever indemnification might have been owed to Game Tracker under its insurance policies"). However, in *Edwards*, the First Circuit also stated that it is unclear what ability an injured third party has to claim "benefits or advantage based on *other* contractual duties owed by the insurer to the insured, such as the duty to defend." *Id.* (emphasis in original). Neither of the other two cases that

Skilken cites stands for the proposition that an injured third party seeking to reach and apply the proceeds of an insurance policy can assert the duty of good faith and fair dealing on behalf of the insured.  *See Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me. 1993) (holding that an insurer owes a duty to act in good faith and deal fairly with its insured, even in the absence of a third-party tort claim); *Greenvall v. Me. Mut. Fire Ins. Co.*, 1998 ME 204, ¶ 14, 715 A.2d 949 (reiterating that "an insurer's duty of good faith and fair dealing arises from an implied covenant in the insurance contract and limits an insured's remedies for breach of the duty to traditional remedies for breach of contract, and the additional statutory remedies provided in the insurance code") (internal quotations omitted).

Additionally, Skilken provides no reason why the Court should allow Skilken to claim the benefits of the duty here, and the Court has qualms about doing so.  The Maine Supreme Judicial Court has stated that the duty to act in good faith and deal fairly "derives from a covenant implicit in the provisions of the insurance contract" and "runs *only* to an insurance company's insured." *Linscott v. State Farm Mut. Auto. Ins. Co.*, 368 A.2d 1161, 1163 (Me. 1977) (emphasis added).  Skilken's claim against Berkley is not based on a breach of contract.  Skilken never had a contract with Berkley.  Skilken's right of action against Berkley is statutory and the remedies for a breach of the duty of good faith and fair dealing are traditional breach of contract remedies, not available to Skilken.  *See Adams v. Universal Underwriters Ins. Co.*, No. 1:10-cv-00146-JAW, 2011 U.S. Dist. LEXIS 53584, at *17 (D. Me. May 18, 2011); *Poisson v. Travelers Ins. Co.*, 31 A.2d 233, 234 (Me. 1943) ("There is no privity of

contract between the plaintiff . . . and the [defendant] which issued a liability policy to the [insured company].  If the proceeds of the policy can be reached by the plaintiff, it is only by virtue of statutory authority or by express provision of the policy").

Even assuming Skilken stands in Oxford's shoes with respect to the duty of good faith and fair dealing, there is no evidence in this record that Berkley breached the duty by paying one judgment and not the other.  To determine whether an insurer breached its duty of good faith and fair dealing, courts have assessed whether the insurer "establishes a reasonable basis for its actions," *see Tait v. Royal Ins. Co.*, 913 F. Supp. 621, 625 (D. Me. 1996), or engaged in conduct in "bad faith." *Marquis*, 628 A.2d at 648.  Skilken suggests that Berkley "attempts to gain a tactical advantage in the litigation by tendering the judgment amount to Karen Skilken while continuing to refuse to pay the company's claim." *Tender Mot.* at 6.  According to Skilken, Berkley is trying to pay the claim that gives it the most exposure if the reach and apply action is successful. *Id.* at 7.  However, parties, for a variety of reasons other than the exercise of bad faith, choose to settle some cases and not others.  It is not bad faith or unfair dealing for an insurance company to pick its fights.

This would be a different matter if, when it tendered the check for the Karen Skilken judgment, Berkley admitted that it had adequate notice and that the Policy was in effect and then attempted to litigate the opposite position here with respect to Joseph Skilken & Co.  The doctrine of judicial estoppel "operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court

19

proceeding." *Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010); *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) ("[Judicial estoppel's] purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment") (internal citations omitted).   Here, Berkley never actually litigated the issue of coverage or notice in the Karen Skilken case and there is no evidence that it admitted that coverage under the Policy extended to Karen Skilken when it made the tender.

### B.    Cross-Motions for Summary Judgment

#### 1.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if it "has the potential to change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).  A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id.* (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

Once this evidence is supplied by the moving party, the nonmovant must "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).   In other words, the non-moving party must "present 'enough

competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).  The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011).  However, the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009).

Where, as here, the parties have filed cross-motions for summary judgment, the court must evaluate each motion independently and "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Matusevich v. Middlesex Mut. Assurance Co.*, 782 F.3d 56, 59 (1st Cir. 2015) (citing *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 170 (1st Cir. 2004)).  As such, for cross-motions for summary judgment, the standard of review is applied to each motion separately. *Libertarian Party of New Hampshire v. Gardner*, 759 F. Supp. 2d 215, 221 (D.N.H. 2010), *aff'd*, 638 F.3d 6 (1st Cir. 2011).  The presence of cross-motions for summary judgment "does not alter or dilute" the summary judgment standard. *Id.* (citing *Kunelius v. Town of Stow*, 588 F.3d 1, 8 (1st Cir. 2009)).

### 2.    Count I: Reach and Apply

Maine's reach and apply statute "requires both a notice and coverage in order for a judgment creditor to have insurance money applied to satisfy a judgment." *Knight v. Me. Mut. Fire Ins. Co.*, 651 A.2d 838, 839 (Me. 1994) (citing 24-A M.R.S. § 2904). Skilken attempts to reach and apply Oxford's Policy with StarNet/Berkley in order to satisfy a judgment it received in this Court and moves for summary judgment on this issue. *Pls.' Mot.* at 1. Berkley also moves for summary judgment asserting that 1) it had no notice of the action against Oxford and thus no meaningful opportunity to defend, and 2) Oxford was not covered by the Policy during the time of the accident. *Def.'s Mot.* at 7.

### a.   Notice

Notice is a "prerequisite to application of the reach and apply statute." *Knight*, 651 A.2d at 839. The statute expressly provides that in order for a judgment creditor to reach and apply the insurance money, the insurer must have notice of the accident, injury, or damage before the recovery of the judgment:

> Whenever any person . . . recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and <u>if before the recovery of the judgment the insurer had had notice of such accident, injury or damage</u>.

24-A M.R.S. § 2904 (emphasis supplied). The Maine Supreme Judicial Court has interpreted section 2904's notice requirement to comport with due process by requiring that an insurer be given notice "that permits a meaningful opportunity to defend its interests." *Jacques v. Am. Home Assurance Co.*, 609 A.2d 719, 721 (Me.

1992); *State Farm Mut. Auto. Ins. Co. v. Lucca*, 838 F. Supp. 670, 672 (D. Me. 1993); *see also MacDowell v. MMG Ins. Co.*, 2007 ME 56, ¶ 10, 920 A.2d 1044 ("We have 'long recognized that the essence of due process is notice and opportunity to be heard'") (quoting *Patrons Oxford Ins. Co. v. Harris*, 2006 ME 72, ¶ 13, 905 A.2d 819); *Michaud v. Mut. Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 790 (Me. 1986) ("[A]t a minimum, notice must be afforded at a meaningful time in the proceedings").

Under section 2904, therefore, apart from the basic issue of coverage, there are two prerequisites to a successful reach and apply action: notice and an opportunity to be heard.  The second focuses on when the insurer knew of the claim and the first on what the insurer knew about the claim.  Turning first to the second issue, timing, the Maine Supreme Judicial Court has made it clear that if an insurer does not receive notice until after a final judgment by default has issued, the insurer has not been given a "meaningful opportunity to defend."  *Jacques*, 609 A.2d at 721 (quoting *Michaud*, 505 A.2d at 789–90).  Yet, if an insurer receives notice after the entry of default but before a final default judgment, the notice is "adequate to satisfy the requirements of due process."  *Michaud*, 505 A.2d at 790; *accord MacDowall*, 2007 ME 56, ¶ 9, 920 A.2d 1044; *Planalto v. Ohio Cas. Ins. Co.*, No. 07-142-P-H, 2008 U.S. Dist. LEXIS 41036, at *20–21 (D. Me. May 19, 2008).  Here, Berkley received notice even before Skilken filed its lawsuit against Oxford: On or about June 24, 2013 Berkley received the letter from Attorney John S. Hoff attaching the June 6, 2013 letter from Attorney Bruce A. Lampert and Skilken did not file its lawsuit against Oxford until August 21, 2013.  *See Compl.*, *Joseph Skilken & Co. v. Oxford Aviation*,

*Inc.*, 2:13-cv-00322-JAW (ECF No. 1).   Therefore, if the June 2013 notice was sufficient, Berkley received the notice at a "meaningful time in the proceedings" under Maine law.

The Court turns then to the first requirement, notice.  As just noted, on June 6, 2013, Attorney Bruce Lampert sent a letter to James Horowitz, who was the owner of Oxford.  DSMF ¶ 6; PRDSMF ¶ 6 (confirming Mr. Horowitz's status as owner of Oxford).  The letter began with the following caption: **Re: Joseph Skilken & Co., N383SS, Date of Accident: 05/31/2013**.  Attorney Lampert wrote:

> Please be advised that this office is representing Mr. Skilken, his family, and his company in all matters arising out of the accident, which occurred at the Colorado Spring Municipal Airport (KCOS) on May 31, 2013.  Please be advised that the damaged aircraft will be available for only a limited time before repairs are commenced.  If you or your insurance company has a desire to see the aircraft in person, please advise me as soon as possible. (I believe you have already been provided photographs of the damage.  If not, please advise and I will forward these to you.)
>
> Additionally, please advise me of the name, location, and telephone number of your adjuster handling this claim as well as the claim number.  I will also require copies of all work orders and log book entries for your work on the aircraft.
>
> I appreciate your assistance in providing this information.

*June 6, 2013 Letter*.

On the heels of the June 6, 2013 letter from Skilken's counsel, on June 24, 2013, Oxford, through its attorney John Scott Hoff, sent a letter to Naji Malek, Assistant Vice President of Berkley.  *June 24, 2013 Letter*.  Attorney Hoff attached the June 6, 2013 letter from Attorney Lampert and stated: "[t]he [June 6, 2013] correspondence appears to assert a claim against Oxford Aviation Inc. and/or James

24

Horowitz stemming from an accident which occurred on May 31, 2013 at the Colorado Springs Municipal Airport (KCOS)." *Id.* at 1. Additionally, in his June 24, 2013 letter, Attorney Hoff wrote: "Accordingly, on behalf of Oxford Aviation, Inc. and James Horowitz, let this correspondence serve as a timely and formal <u>notice of this claim</u> pursuant to the terms of the Policy issued by StarNet, so that StarNet can timely investigate, resolve, and/or defend the claim." *Id.* (emphasis in original). Mr. Hoff also attached a copy of 24-A M.R.S. § 2908, maintained that Berkley had not effectively notified Oxford of nonrenewal, asserted that Oxford was insured for the Skilken accident under its policy with Berkley, and demanded that coverage should be made available for losses occasioned by the accident. *Id.* at 1–2 ("Otherwise, it is <u>clear</u> that the subject Policy was in full force and effect on the date of the accident, May 31, 2013, and coverage would be afforded to my clients under the Policy, as a matter of law"). Finally, Attorney Hoff expressly demanded that Berkley "undertake all necessary requirements of the subject Policy pertaining to your duties as set forth in the Insuring Agreement." *Id.* at 2.

On July 1, 2013, Mr. Gould, President of Berkley, forwarded the correspondence to Berkley's attorney, James M. Bowie. Berkley did not receive any further notice from Skilken before the filing of the federal lawsuit in Maine on August 21, 2013 or, for that matter, before the entry of default against Oxford and the issuance of a default judgment.[15]

---

[15] Berkley's statement of fact paragraph 23 says that Attorney Bowie became aware of the existence of the pending lawsuit by happenstance in October 2014, while researching another matter. DSMF ¶ 23; PRDSMF ¶ 23. By that time, specifically on November 18, 2013, the Court had issued a

Although Berkley acknowledges receipt of the Lampert and Hoff letters, Berkley argues that this notice was insufficient because it did not provide Berkley with "adequate notice of the Plaintiffs' lawsuits against Oxford Aviation sufficient to satisfy its right to due process." *Berkley Mot.* at 7.

The Maine Supreme Judicial Court has previously addressed what does and does not constitute adequate notice under section 2904. At one extreme is *Knight*, where the insured's attorney merely contacted the insurance company to "ascertain whether they provided coverage for a trespass or boundary encroachment action" and was informed that the insurer did not provide such coverage. 651 A.2d at 840. Writing in the context of notice from an insured, the Maine Supreme Judicial Court concluded this notice was inadequate, writing that the notice: (1) did not refer to a specific case, policyholder or potential claim and (2) did not specifically make a request for coverage or defense. *Id.*

A closer case is *Jacques v. American Home Assurance Company*, 609 A.2d 719 (Me. 1992). In *Jacques*, in 1984, Floyd Jacques consulted an attorney, Joseph Mackey, about the possibility of bringing a civil action against Mr. Jacques' former employer for wrongful discharge. *Id.* at 720. Attorney Mackey waited to bring a civil action until after the statute of limitations had run and the civil action was dismissed. *Id.* Mr. Mackey "informed [his client] of the dismissal of the action and discussed his liability for malpractice." *Id.* He also "notified his [malpractice] insurance agent of the incident." *Id.* After two years, in 1987, Mr. Mackey's insurer wrote to him and

_____

default judgment against Oxford. *Default J.*, *Joseph Skilken & Co. v. Oxford Aviation, Inc.*, 2:13-cv-00322-JAW (ECF No. 24).

26

stated that unless advised otherwise, it was closing its file and requested that Mr. Mackey give it "immediate notice of any further developments." *Id.* Mr. Mackey never responded. *Id.* In July 1988, Mr. Jacques sued Mr. Mackey for legal malpractice. *Id.* Mr. Mackey failed to answer, appear, or notify his insurer, American. *Id.* A default judgment was entered against him. *Id.* Mr. Jacques then sued American under 24-A M.R.S. § 2904 in an attempt to reach and apply the proceeds of Mr. Mackey's policy to the default judgment. *Id.* However, because American received no notice of the proceedings against Mr. Mackey prior to the injured party's action against it, the Court held that American did not have a meaningful opportunity to defend itself. *Id.* at 721.

A third case is *MacDowall v. MMG Insurance Company*, 2007 ME 56, 920 A.2d 1044, where an insurance company adjuster unsuccessfully negotiated with a plaintiff's attorney in an attempt, pre-suit, to resolve a claim. *Id.* ¶ 3. However, when the insured was sued, he failed to respond to the lawsuit and a default was entered against the insured. *Id.* ¶ 4. The insurer learned of the default before a final judgment issued, attempted unsuccessfully to remove the default, and participated on behalf of the insured at a damages hearing. *Id.* The Maine Supreme Judicial Court noted that to comply with due process an insurer must have notice at a "meaningful time in the proceedings." *Id.* ¶ 8 (quoting *Michaud*, 505 A.2d at 789–90). Even though the insurer's motion to remove the default was denied, the *MacDowall* Court concluded that the process in the underlying action satisfied due process concerns because the insurer had "the opportunity to remove the default" and

27

"the opportunity to contest damages." *Id.* ¶¶ 9–14.  The Maine Law Court affirmed judgment against the insurer in the reach and apply action.  *Id.* ¶ 15.

Combining the June 6, 2013 Lampert letter with the June 24, 2013 Hoff letter, the Court concludes that Berkley had been supplied with "notice of such accident, injury or damage" within the meaning of section 2904 as of late June 2013.  The June 6, 2013 Lampert letter referred to a specific policyholder and a specific potential claim.  *See Knight*, 651 A.2d at 840 (implying that reference to a "specific case, policyholder or potential claim" would provide adequate notice).  Although the Lampert letter did not refer to a "specific case" because a lawsuit had not yet been filed, section 2904 does not require that the insurer be placed on notice of a lawsuit. It requires only that the insurer be placed on notice of "such accident, injury or damage."  24-A M.R.S. § 2904.  Moreover, Attorney Hoff's June 24, 2013 letter "specifically make[s] a request for coverage or defense."  *See Knight*, 651 A.2d at 840. The *Knight* Court stressed that the contact with the insurer in that case was "neither a notice of the Knights' claim, a request that Maine Mutual defend the action, or a request for indemnity."  *Id.*  The two June letters were all of these and, when combined, are sufficient to comply with the notice requirements of section 2904.[16]

Berkley vigorously argues that upon receipt of the June letters, it was placed in an awkward position.  During the run-up to May 14, 2013, when the Berkley policy

---

[16]     Berkley contends that the facts of this case closely resemble the facts in *Jacques* in which the Maine Supreme Judicial Court held that notice was inadequate.  However, in *Jacques*, the claim against Attorney Mackey was amorphous.  There were no apparent steps taken by Attorney Mackey's client to bring a claim against him.  By contrast, here, Attorney Lampert's June 6, 2013 letter put Berkley on notice that Skilken, at the very least, was represented by an attorney with respect to the May 31, 2013 accident.  This representation demonstrates that Skilken had taken affirmative steps to bring a claim against Oxford.

was set to expire, Cross Insurance repeatedly attempted unsuccessfully to get Oxford's attention and renew its policy, and Berkley had serious doubts about whether its policy was even effective, because it appeared to have expired on May 14, 2013, two weeks before the May 31, 2013 Skilken accident.   Furthermore, once Attorney Hoff entered the picture for Oxford and Attorney Bowie entered the picture for Berkley, the lawyers had to deal with each other, not their clients.   Then, despite its efforts to learn more about the accident from its insured, Oxford and its attorney went silent.

But in the context of section 2904, the Maine Supreme Judicial Court has been unmoved by the plight of insurance companies with uncooperative insureds.  So long as the insurer gets notice within the meaning of section 2904 before the entry of a final default judgment, as the previous discussion reveals, the Maine Law Court has concluded that the insurer is subject to a reach and apply action.  In *MacDowall*, for example, plaintiff's counsel entered into negotiations with the insurer which ended "without resolution on November 19, 2001."  *MacDowall*, 2007 ME 56, ¶ 3.  When plaintiff's counsel sued the insured on June 12, 2002, he apparently gave no notice of the lawsuit to the insurance company.  *Id.* ¶¶ 4, 13.  Then the insurer's insured also failed to notify his insurance company that he had been served with a complaint and summons, and the insurer did not become aware of the lawsuit until after default had been entered but before final judgment.  *Id.* ¶ 4.  The *MacDowall* Court was not impressed:  "[W]hether MMG had a good excuse or not is irrelevant to our inquiry in the present case."  *Id.* ¶ 14; *Carruthers v. Mopeds of Me., Inc.*, 539 A.2d 1104, 1106

(Me. 1988) ("In this case, the fact that Centaur may have a good excuse for its failure to act is irrelevant").

It is true that, after having informed Oxford (and as it turns out Berkley) in June 2013 of the potential claim, neither Skilken nor Oxford notified Berkley when Skilken filed suit. However, in 2008, a judge of this District wrote that "the Law Court's explication of section 2904 has never required specific notice of each stage of the underlying action." *Planalto*, 2008 U.S. Dist. LEXIS 41036, at *23. The Maine Supreme Judicial Court has "merely require[d] notice sufficiently in advance of the recovery of the judgment to allow the insurer, if it chooses, to act to protect its interests." *Id.* Thus there is "no [ ] authority for [the] contention that section 2904 imposes upon an insured a continuing obligation to provide specific notice of developments in the underlying action." *Id.* All section 2904 requires is "notice of the accident, injury, or damage"; there is no additional language requiring ongoing notice of developments in the claim or actual notice of the filing of a lawsuit against the insured.

Berkley also argues that notice was insufficient under the terms of the Policy itself, which explicitly details the insured's duties in the event of an occurrence, loss, claim or suit:

> **4.    Duties in the Event of Occurrence, Loss, Claim or Suit.**
> (a)    You must see to it that we or the Aviation Managers are notified promptly of an occurrence which may result in a claim. Notice should include:
> (1)    How, when and where the occurrence took place; and
> (2)    The names and addresses of any injured persons and witnesses.

(b)     If a claim is made or suit is brought against any insured, you must see to it that we or the Aviation Managers receive prompt written notice of the claim or suit.

(c)     You and any other involved insured must:

(1)     Immediately send us or the Aviation Managers copies of any demands, notice, summonses or legal papers received in connection with the claim or suit;

(2)     Authorize us or the Aviation Managers to obtain records and other information;

(3)     Cooperate with us or the Aviation Managers, in the investigation, settlement or defense of the claim or suit;

(4)     Assist us or the Aviation Managers, upon our or the Aviation Manager's request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may also apply.

*Policy*, § 4, ¶ 4(a)-(c).  It is of course ironic that Berkley is claiming Oxford failed to comply with the provisions of an insurance policy that Berkley is also claiming provided no coverage at the time of the Skilken accident, and the Court is not convinced that the notice Attorney Lampert gave Oxford and by extension Berkley would not be deemed in substantial compliance with this policy provision.  *See Knight*, 651 A.2d at 839 ("Courts read insurance policy notice requirements liberally in favor of insureds, finding a notice that substantially complies with the requirements sufficient to satisfy the purpose of giving the insurer an adequate opportunity to investigate") (collecting cases).   Of course, given its concerns about coverage, Berkley had the option of investigating the claim and defending any lawsuit against Oxford under a reservation of rights while Berkley was determining the coverage question. *See Patrons*, 2006 ME 72, ¶ 14, 905 A.2d 819.

31

More to the point, the reach and apply statute only requires notice under section 2904.  The parties have not cited a case nor has the Court found one, where the insurer received notice sufficient under section 2904, yet was not required to pay a reach and apply action because the insured did not comply with the notice provisions of the policy.  *MacDowall*, *Carruthers*, and other Maine cases, where the insured did not inform the insurer of the lawsuit, and the reach and apply action was still successful, suggest otherwise.  Instead, the test is whether the insurer received notice that complied with section 2904 and, "[o]nce the insurer receives notice, the insurer bears the burden of following up on that information."  *Allen v. Nautilis Ins. Co.*, No. CV-12-0163, 2013 Me. Super. LEXIS 178, at *12 (Me. Super. Ct. Aug. 2, 2013).

Although Berkley strenuously maintains that it tried its best by searching NTSB filings and that its ability to contact its own insured was stymied by Oxford's representation by an attorney, Berkley cited no authority for the proposition that the Court may consider the extent of an insurer's efforts to investigate the claim after notice in evaluating a reach and apply action.  Furthermore, here, even though Berkley contended that there were good reasons it did not contact Plaintiff's counsel, there is nothing in this record that would have prevented Berkley from contacting Attorney Lambert, obtaining further details about the Skilken accident, and requesting formal notice before the claim went to suit.  Even if it could find no record of the accident in NTSB filings, Attorney Lampert expressly invited Oxford (and Berkley) to come and see the aircraft; his invitation went unanswered.

The Court concludes that in June 2013, Berkley received sufficient notice under section 2904 of the "accident, injury or damage" involving the Skilken aircraft on May 31, 2013 at the Colorado Springs Municipal Airport and of a claim being made against its alleged insured, Oxford Aviation, Inc.

### b.     Coverage

Assuming there was sufficient notice, Maine's reach and apply statute "enables a judgment creditor to satisfy a judgment from the judgment debtor's insurer if 'the judgment debtor was insured against such liability when the right of action accrued.'" *Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 8, 66 A.3d 585 (quoting *Sarah G. v. Me. Bonding & Cas. Co.*, 2005 ME 13, ¶ 6, 866 A.2d 835); *see also* 24-A M.R.S. § 2904.  It is not in dispute that the damages to Skilken are "covered losses" under the Policy. *See* DRPSMF ¶ 28.  The issue is whether the Policy was in effect on the date of the accident, May 31, 2013.  *See Adams*, 2011 U.S. Dist. LEXIS 53584, at *18 (holding that judgment creditor cannot sustain a claim against insurer under Maine's reach and apply statute if judgment debtor was not insured at the time of the accident).

The Policy's expiration date was May 14, 2013.   Under Maine law, the "termination of a policy at its expiration date" is called "nonrenewal" and nonrenewal is not effective "prior to 30 days after receipt of written notice by the insured."  24-A M.R.S. § 2908(1)(D), (5)(B).  The Policy issued by Berkley in this case also contained an endorsement which provided that "[i]f we decide not to renew this coverage, we will mail or deliver to the first Named Insured shown in the Declaration written

33

notice of the non-renewal not less than 33 days before the expiration date." *Policy, Maine Amendatory Endorsement* at 1.

According to Skilken, Berkley failed to provide formal written notice to Oxford Aviation of the nonrenewal of the Policy at least 30 or 33 days prior to May 31, 2013, the date of the hard landing, and therefore the Policy was still in effect when the right of action accrued.   *Pls.' Mot.* at 10–13.   In response, Berkley argues that it substantially complied with Maine law and the Policy and provided notice of nonrenewal more than 30 days prior to its expiration date of May 14, 2013. *Def.'s Mot.* at 13–15.

There are two relevant communications: the May 14, 2013 letter and the March 1, 2013 letter.   The May 14, 2013 letter says that "[a]fter several unsuccessful attempts at obtaining the application to secure a quote for the renewal of your hangarkeepers coverage, [Berkley and Cross Insurance] as of the date and time above no longer carry hangarkeepers insurance for you." *May 14, 2013 Letter* at 1.   It states that the effective date of the cancellation[17] is "12:01 AM 5/14/2013." *Id.*   This letter makes clear that Berkley and Cross Insurance do not intend to renew the Policy. However, the notice was sent on May 14, 2013 and has an effective date of May 14, 2013.   This notice does not comply with Maine law which states that the nonrenewal is not effective "prior to 30 days after receipt of written notice by the insured."   24-A

---

[17]     The letter refers to the "cancellation" of the Policy.   Under Maine law, "'cancellation' means termination of a policy at a date other than its expiration date."   24-A M.R.S. § 2908(1)(A). "'Nonrenewal' means termination of a policy at its expiration date." *Id.* § 2908(1)(D).   Because the Policy was intended to terminate at its expiration date, this letter concerns nonrenewal, not cancellation, and the Court applies the provisions governing expiring policies rather than the cancellation of policies. *See Martin Mach. Inc. v. The Hanover Ins. Co.*, No. CV-88-1274, 1990 Me. Super. LEXIS 64, at *2–3 (Me. Super. Ct. Mar. 9, 1990).

M.R.S. § 2908(5)(B). This Court has held that a temporally defective notice does not void the notice entirely but delays the effective date until the statutory period has run. *See Adams*, 2011 U.S. Dist. LEXIS 53584, at *32. Based on this letter alone, the Policy's termination would not have been effective under Maine law until at least 30 full days after May 14, 2013, or June 13, 2013, which means that the Policy would have been in effect when the accident occurred on May 31, 2013.

Berkley, however, argues that the March 1, 2013 letter substantially complied with the notice requirements and, because it was sent more than 30 days prior to May 14, 2013, the Policy was effectively terminated on that date. The March 1, 2013 letter states that the Policy is "due to expire on May 14, 2013" and that "[i]n order to allow [Berkley] sufficient time to review and determine [Oxford's] renewal position, updated renewal information must be provided by you, to your broker." *March 1, 2013 Letter*. The letter goes on to say:

> Insurance regulations of your state require us to notify you in advance, of your anticipated policy renewal. Please be aware that your policy may not be renewed as it is currently written. The renewal may be conditioned to include changes in coverage or endorsements, a significant increase in premium or deductibles, or potential non-renewal.

*Id.* The letter also states "[u]pon receipt of your completed underwriting information from your broker, we will review and determine our renewal position." *Id.*

Nowhere does this letter state that Berkley intends not to renew the Policy. It just requests underwriting information so it can determine whether to renew. This is supported by the fact that Mr. Vermette of Cross Insurance testified that this letter

was not a notice of nonrenewal and the fact that Ms. Connell said that "they did not issue any letter [of nonrenewal]." *See Oxford Aviation Timeline* at 1.

Berkley argues that the representatives from Cross Insurance subsequently made it clear through telephone conversations that the Policy would not renew if Oxford did not complete the underwriting information. It analogizes this case to a case from the state of Maine Superior Court in Cumberland County, *Martin Machine Inc. v. The Hanover Insurance Company*, No. CV-88-1274, 1990 Me. Super. LEXIS 64 (Me. Super. Ct. Mar. 9, 1990). The Court agrees that there are some similarities between this case and *Martin*. Like here, in *Martin*, the insurance company sent a "Workers' Compensation Renewal Offer" warning Martin that the policy would expire if a renewal premium was not paid; Martin never renewed the policy. *See* 1990 Me. Super. LEXIS 64, at *1. When Martin sought coverage for an injury occurring a year and a half later, Hanover denied coverage stating that it had lapsed on its expiration date. *Id.* Martin filed suit, alleging that Hanover never sent it a notice of nonrenewal and therefore, the policy was still in effect. *Id.* The *Martin* court rejected this argument reasoning that Hanover had substantially complied with the notice requirements and was not required to cover the injuries. *Id.* at 5.

However, the *Martin* court specifically noted the fact that the injuries occurred some year and a half later. *Id.* at 4–5 ("Noteworthy, however, is the fact that the injury to employee occurred in August, 1988, about one and one-half years after the policy had lapsed"). Here, the injury occurred only 17 days after the Policy had

36

expired and 17 days after the May 14, 2013 letter stating that the Policy had been terminated.

Further, the notice in *Martin* expressly stated that the policy would expire if the renewal premium was not paid, making it clear that nonpayment of a premium would result in the expiration of the policy. The March 1, 2013 letter in this case contains no such language. It does state that if updated renewal information is not provided, Berkley and Cross Insurance will not have sufficient time to review and determine their renewal position. However, it does not necessarily follow that the Policy would not be renewed.

Indeed, the letter provides a number of different options: "Please be aware that your policy may not be renewed as it is currently written. The renewal may be conditioned to include changes in coverage or endorsements, a significant increase in premium or deductibles, or potential non-renewal." *March 1, 2013 Letter*. It was not until Mr. Vermette's phone conversation with Oxford sometime after the letter that Cross Insurance told Oxford that if it did not pay the premium, the Policy would not renew. However, these subsequent telephone conversations do not substitute for the "written notice" required by the statute. *See* 24-A M.R.S. § 2908(5)(B); *see also Gov't Employees Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 458 A.2d 1205, 1209 (Me. 1983) ("[W]here a statute provides a mandatory method of cancelling an insurance policy that has been certified under the financial responsibility law, and an insurer fails to comply with the statutory method of cancellation, the insurer is precluded from asserting that the policy has been cancelled").

37

The Court concludes that the information contained in the March 1, 2013 letter did not provide sufficient written notice of nonrenewal, that the May 14, 2013 letter is the first nonrenewal notice compliant with the statute received by Oxford, and that the nonrenewal in the May 14, 2013 letter was not effective until 30 days later, after the date of the accident. The Court concludes that Oxford's policy was in effect on the date of the hard landing.

Because the Court concludes that notice was sufficient under 24-A M.R.S. § 2904, and that the Policy was in effect on the date of the accident, Skilken can reach and apply the proceeds of the Policy in order to satisfy its judgment.

### 3.      Count II: Declaratory Judgment

In addition to the reach and apply claim in Count I, Skilken brings a claim for declaratory judgment in Count II to determine "whether the Policy was in effect at the time of the hard landing, and . . . whether pursuant to the Policy terms indemnification for plaintiffs' claims shall occur." *First Am. Compl.* ¶ 10. Berkley seeks summary judgment on this count, arguing that the only party entitled to bring a declaratory judgment seeking interpretation of a contract's terms are the parties to the contract. *Def.'s Mot.* at 16. Skilken focused its arguments on the reach and apply count and did not respond to Berkley's arguments concerning Count II, *see Pls.' Opp'n* at 1–13, and therefore waives the right to challenge a judgment in Berkley's favor on these counts. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) ("[I]ssues adverted to . . . in a perfunctory manner, unaccompanied by some

developed argumentation, are deemed to have been abandoned") (internal quotations omitted).

Moreover, Maine law makes clear that the only remedy available to Skilken, a non-party to the insurance contract, is the reach and apply statute.  *See Tungate v. Gardner*, 2002 ME 85, ¶¶ 7–8, 797 A.2d 738 ("[I]t is 'proscribed practice in Maine to bring a direct action against an insurance company in a negligence case prior to final judgment, the only remedy being found in the 'Reach and Apply' statute'") (quoting *Allen v. Pomroy*, 277 A.2d 727, 730 (Me. 1971)); *Poisson v. Travelers Ins. Co.*, 31 A.2d 233, 234 (1943) ("There is no privity of contract between the plaintiff . . . and the [defendant] which issued a liability policy to the [insured company]").  Summary judgment on Count II is granted.

### 4.    Count III: Damages

In Count III, Skilken seeks payment of its damages resulting from the hard landing.  *First Am. Compl.* ¶¶ 11–15.  As Skilken may not sustain a direct action against Berkley because there is no privity of contract between Skilken and Berkley, the Court interprets Count III as requesting that the proceeds of the Policy be applied to satisfy Skilken's judgment for damages against Oxford pursuant to 24-A M.R.S. § 2904.

On November 18, 2013, this Court issued a default judgment in the total amount of $423,295.77 in favor of Joseph Skilken & Co. and against Oxford Aviation, Inc.  *See Default J.*, *Joseph Skilken & Co. v. Oxford Aviation, Inc.*, 2:13-cv-00322-JAW (ECF No. 24).  In 2008, relying on *Elliott v. Hanover Insurance Company*, 1998 ME

138, 711 A.2d 1310, this District concluded that a "defendant is not bound by the determination of damages made by the state court, if it can show that damages judgment was unreasonable." *Planalto*, 2008 U.S. Dist. LEXIS 41036, at *27.  In *Planalto*, the Court observed that what is contemplated is "not, strictly speaking, a relitigation of the issue of damages.  Rather, the burden is on the insurer who declined to participate below to prove that the damages awarded below were unreasonable." 2008 U.S. Dist. LEXIS 41036, at *27.

When the Court raised *Planalto* during oral argument, counsel responded that damages had not been briefed and urged the Court to reserve the damages issue for the future.  The Court agreed to do so.  Accordingly, the Court will schedule a telephone conference with counsel to discuss damages.

## IV.   CONCLUSION

The Court hereby DENIES the Plaintiff's Motion to Determine Effect of Tender (ECF No. 34), GRANTS in part and DENIES in part the Plaintiff's Motion for Summary Judgment (ECF No. 39), and GRANTS in part and DENIES in part the Defendant's Motion for Summary Judgment (ECF No. 43).  The Court GRANTS Plaintiff's Motion for Summary Judgment on Count One of its Complaint only insofar as the Court determines that the Defendant is liable to the Plaintiff under 24-A M.R.S. § 2904, Maine's reach and apply statute, and the Court DENIES its Motion for Summary Judgment on Count Two of its Complaint.  The Court DENIES Defendant's Motion for Summary Judgment on Count One of the Complaint and GRANTS its Motion for Summary Judgment on Count Two of the Complaint.  The

40

Court DISMISSES the Plaintiff's and Defendant's Motions for Summary Judgment as to Count Three of the Complaint.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of March, 2017